# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

Contempo Florida Holidays Limited, Inc.

      Debtor.

_____/

Douglas N. Menchise, Chapter 7 Trustee

      Plaintiff,

v.

**ExpoCredit,** LLC

      Defendant.

_____/

Case No.: 8:19-bk-11518-MGW

Chapter 7 Case

Adv. No.: **8:21-ap-00020-MG**

## ANSWER OF EXPOCREDIT, LLC

ExpoCredit, LLC **("ExpoCredit" or "Defendant"),** by and through the undersigned counsel, hereby files its Answer to the Complaint of Douglas N. Menchise, as Chapter 7 Trustee (the **"Trustee"),** and states as follows:

## I.     NATURE OF ACTION

1.     This is an adversary proceeding seeking damages for breach of contract, avoidance of certain transfers, and an accounting against ExpoCredit.

**RESPONSE:** Defendant admits the allegation regarding the nature of the proceeding.

## II.     JURISDICTION AND VENUE

2.     This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), §§ 105, 541, 544, 547 and 550 of the Bankruptcy Code, seeking damages and other relief related to the Debtor's property.

**RESPONSE:** Defendant admits the allegation regarding the nature of the proceeding.

3.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

**RESPONSE:** Admitted.

**The Factoring Agreement with ExpoCredit**

13.     In an effort to ensure adequate capital and necessary cash flow, Contempo and ExpoCredit entered into an agreement entitled "EXPOCREDIT LLC FACTORING AGREEMENT" on February 8, 2013 (the "Factoring Agreement"). A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit "1"**.

**RESPONSE:** Admitted.

14.     The Factoring Agreement defined "Net Invoice Amount" as the "gross invoice amount" of any invoice assigned to ExpoCredit "less any applicable taxes, credits, selling discounts, or other deductions, all as indicated on the face of the invoice." *See* Ex. 1, p. 4, ¶ xi.

**RESPONSE:** Admitted.

15.     The schedule of charges incorporated into the Factoring Agreement provided that with respect to each invoice assigned to ExpoCredit:

(b)     ExpoCredit shall remit the Purchase Price as follows:

(i)     On ExpoCredit's receipt of the Purchased Account, the Initial Advance, equal to the percentage set forth on Exhibit "B" hereto as the Initial Advance of the Net Invoice Amount.

(ii)     On ExpoCredit's receipt of cleared funds equal to the full amount owing on the Purchase Account, the Balance Payment, equal to the percentage set forth on Exhibit "B" hereto as the Balance Payment, minus any other amounts due to ExpoCredit under this Agreement ("Other Charges") minus the applicable Factoring Commission.

*See* Ex. 1, p. 8, ¶ 16

**RESPONSE:** Admitted.

16.     Exhibit B to the Factoring Agreement further specified that the "Initial Advance" constituted "80% of the Net Invoice Amount" (hereinafter, the "Advance Payment") and the

"Balance Payment" constituted "20% of the Net Invoice Amount" (hereinafter the "Balance Payment"). *See* Ex. 1, p. 20.

**RESPONSE:** Admitted.

17.    In other words, ExpoCredit would initially advance eighty percent (80%) of the Net Invoice Amount as the Advance Payment for any invoice assigned to ExpoCredit (the "Factored and Balance Payment, with Contempo receiving the other eighteen percent (18%) as its Factoring Commission.[2]

**RESPONSE:** Admitted.

23.    ExpoCredit failed to remit the amounts owed to Contempo, namely the Balance Payment(s), consistent with the contractually agreed fee schedule, despite ExpoCredit receiving payment on various invoices in full from Virgin.

**RESPONSE:** Denied.

24.    Similarly, ExpoCredit failed to account for all amounts due to Contempo pursuant to ExpoCredit's obligations consistent with the Factoring Agreement.

**RESPONSE:** Denied.

## The Accounts Receivable Assigned to ExpoCredit

25.    Following the execution of the Factoring Agreement, Contempo began assigning various accounts receivable to ExpoCredit as follows:[3]

> (a)    On October 10, 2019, Contempo assigned 113 invoices to ExpoCredit, totaling $172,994.98 in accounts receivable otherwise owed to Contempo. A true and correct copy of this assignment is attached hereto as **Exhibit "2"**;

---

[2] According to the Factoring Agreement's plain language, for any Factored Invoice not paid by Virgin's customers within seventeen (17) days after ExpoCredit's disbursement of the Advance Payment, ExpoCredit would likely be entitled to retain the entire Balance Payment.

[3] The Trustee reserves the right to amend these assignments to add additional ones as discovered.

(b)     On October 16, 2019, Contempo assigned 97 invoices to ExpoCredit totaling $201,776.34 in accounts receivable otherwise owed to Contempo. A true and correct copy of this assignment is attached hereto as Exhibit "3";

(c)     On October 22, 2019, Contempo assigned 78 invoices to ExpoCredit totaling $165,338.49 in accounts receivable otherwise owed to Contempo. A true and correct copy of this assignment is attached hereto as **Exhibit "4";**

(d)     On October 25, 2019, Contempo assigned 106 invoices to ExpoCredit totaling $197,225.13 in accounts receivable otherwise owed to Contempo. A true and correct copy of this assignment is attached hereto as **Exhibit "5";**

(e)     On October 29, 2019, Contempo assigned 132 invoices to ExpoCredit totaling $221,576.55 in accounts receivable otherwise owed to Contempo. A true and correct copy of this assignment is attached hereto as **Exhibit "6";**

**RESPONSE:** The Exhibits speak for themselves.

### The Bankruptcy Case

31.     On December 5, 2019 (the "Petition Date"), Contempo filed its voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

**RESPONSE:** Admitted.

32.     On January 28, 2020, the Trustee was appointed to administer Contempo's Chapter 7 estate (Doc. 30).

**RESPONSE:** Admitted.

### <u>COUNT I — BREACH OF CONTRACT</u>

33.     The Trustee re-alleges and incorporates by reference paragraphs 1 through 32 of this Complaint as if fully set forth herein.

**RESPONSE:** Defendant reincorporates by reference its prior responses in response to this paragraph.

34.     This is an action for breach of contract against ExpoCredit.

**RESPONSE:** Defendant admits that the Trustee asserts a breach of contract.

35.     Upon commencement of this bankruptcy case, and on the Petition Date, all legal and equitable interests of Contempo became property of the estate pursuant to 11 U.S.C. § 541(a)(1).

**RESPONSE:** Admitted.

36.     Accordingly, the Trustee is entitled to pursue such causes of action against ExpoCredit on behalf of, and for the benefit of, Contempo.

**RESPONSE:** Admitted.

37.     Contempo's Factoring Agreement with ExpoCredit required that ExpoCredit remit the Balance Payment(s) to Contempo for all Factored Invoices once such invoices were paid in full by Virgin's customers.

**RESPONSE:** Denied, insofar as Contempo's controller repeatedly gave ExpoCredit different instructions regarding the use of the monies.

38.     Notwithstanding the payment by Virgin's customers to ExpoCredit on the Factored Invoices, ExpoCredit failed to remit the Balance Payment(s), less its commission, to Contempo in breach of the Factoring Agreement.

> made by ExpoCredit, collections received by ExpoCredit, and charges made to [Contempo's] Account under this Agreement. The Account Statement shall be updated each and every time there is a transaction concerning the [Contempo] Account.

Ex. 1, p. 14, ¶ 19.

**RESPONSE:** Denied.

46.     Notwithstanding ExpoCredit's failure to comply with these contractual obligations, Contempo is further entitled to an accounting of all advances made by ExpoCredit, collections received by ExpoCredit, and any and all charges made by ExpoCredit to Contempo's account under the Factoring Agreement.

**RESPONSE:** Denied.

47.     The Trustee has engaged the offices of Shumaker, Loop & Kendrick, LLP in this matter and is required to pay them a reasonable fee for their services.

**RESPONSE:** Admitted.

## COUNT II — ACCOUNTING

48.     The Trustee re-alleges and incorporates by reference paragraphs 1 through 32 of this Complaint as if fully set forth herein.

**RESPONSE:** Defendant reincorporates by reference its prior responses in response to this paragraph.

49.     Notwithstanding the rights enumerated in the Factoring Agreement, an equitable right of accounting should be provided for due to the extensive and complicated transactions by and between the Debtor and ExpoCredit.

**RESPONSE:** Denied.

50.     To quantify the amount of assets and funds possessed by third parties, inappropriately conveyed or converted, an accounting is needed of: (i) all transfers of assets and

**RESPONSE:** Denied.

56.     This is an action for avoidance of fraudulent transfers against ExpoCredit pursuant to 544 and 548 of the Bankruptcy Code.

**RESPONSE:** Defendant admits that the Trustee asserts fraudulent transfers, but denies that they occurred.

57.     The Fraudulent Transfers occurred between October 10, 2019 and November 27, 2019, as set forth in paragraph 24, above.

**RESPONSE:** Denied.

58.    The face amount of the invoices making up the Fraudulent Transfers totaled $1,505,637.42.

**RESPONSE:** Denied.

59.    On information and belief, ExpoCredit did remit the Advance Payment for each of these invoices, accounting for approximately $1,204,509.93.

**RESPONSE:** Admitted.

60.    However, ExpoCredit failed to remit the other amounts owed to Contempo, namely the Balance Payment(s) totaling approximately $301,127.49, consistent with the contractually agreed fee schedule, and despite ExpoCredit receiving payment on various invoices in full from Virgin.

**RESPONSE:** Denied, insofar as Contempo's controller repeatedly gave ExpoCredit different instructions regarding the use of the monies.

61.    Accordingly, the Fraudulent Transfers were transfers of an asset or property of the Debtor within the meaning of § 544(b)(1) of the Bankruptcy Code.

**RESPONSE:** Denied.

62.    The Fraudulent Transfers constitute avoidable fraudulent transfers because they:

a.    were a transfer of an interest of the Debtor in property, namely the Factored Invoices;

b.    occurred on dates between October 10, 2019 and November 27, 2019, all of which are within two (2) years of the Petition Date; and

c.    were all transfers for which the Debtor received less than reasonable equivalent value in exchange—as no Balance Payments were ever received following such transfers.

immediate transferee or the entity for whose benefit such transfer was made, or from any immediate or mediate transferee.

**RESPONSE:** Denied.

70.    The Fraudulent Transfers are avoidable transfers that may be recovered for the benefit of the Debtor's Estate.

**RESPONSE:** Denied.

71.    ExpoCredit was the initial or mediate transferee of the Fraudulent Transfers, and such transfers were to or for ExpoCredit's benefit.

**RESPONSE:** Denied.

72.    As Contempo owed nothing to ExpoCredit, ExpoCredit did not utilize the Fraudulent Transfers for value to satisfy or secure a present or antecedent debt.

**RESPONSE:** Denied.

73.    Accordingly, 11 U.S.C. § 550(a) allows the Trustee to recover the Fraudulent Transfers or their value from ExpoCredit, plus interest thereon, for the benefit of the Debtor's Estate.

**RESPONSE:** Denied.

## COUNT V — OBJECTION TO CLAIM NO. 96

74.    The Trustee re-alleges and incorporates by reference paragraphs 1-28, 31-40, 55--66, and 67-71 of this Complaint as if fully set forth herein.

**RESPONSE:** Defendant reincorporates by reference its prior responses in response to this paragraph.

75.    The Trustee objects to ExpoCredit's secured claim in the amount of $1,449,243.65 filed on April 7, 2020 as Claim No. 96 (hereafter the "Claim No. 96").

**RESPONSE:** Trustee's objection is noted.

76.     The Trustee objects to Claim No. 96 based on reasons which include, but are not limited to: (a) set-off, recoupment, and damages based upon the allegations and claims set forth in the instant Adversary Complaint including, but not limited to, (i) ExpoCredit's Breach of Contract in failing to remit Balance Payment(s) owed to the Debtor, (ii) ExpoCredit's fraudulent transfers Contempo an amount equal to the aggregate amount of the Fraudulent Transfers, plus interest thereon and costs.

**RESPONSE:** ExpoCredit denies and disputes the objections raised by Trustee.

## AFFIRMATIVE DEFENSES

ExpoCredit assets the following affirmative defenses:

1. Failure of consideration, insofar as a considerable amount of the receivables for which Contempo received payment did not meet the requirements of the contract between the parties, including but not limited to the presentment of mere reservations as if they were receivables;

2. Payment and setoff, insofar as Contempo (1) presented and received payment for alleged receivables which did not meet the requirements of the contract; (2) repeatedly instructed ExpoCredit to utilize the balance payments referenced by the Trustee to pay-down Contempo's existing obligations rather than pay the money to Contempo; and (3) improperly manipulated the "lock-box" set up to collect the Virgin payments so as to steal payments that were supposed to go to ExpoCredit.

3. Estoppel, waiver and laches, insofar as Contempo (1) presented and received payment for alleged receivables which did not meet the requirements of the contract; (2) repeatedly instructed ExpoCredit to utilize the balance payments referenced by the Trustee to pay-down Contempo's existing obligations rather than pay the money to Contempo; and (3) improperly

manipulated the "lock-box" set up to collect the Virgin payments so as to steal payments that were supposed to go to ExpoCredit.

Respectfully submitted,

**AKERMAN LLP**
*Counsel for ExpoCredit, LLC*
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, Florida 33131
Tel.: (305) 374-5600/Fax: (305) 374-5095

By: */s Lawrence D. Silverman, Esq.*
LAWRENCE D. SILVERMAN
Florida Bar No. 007160
lawrence.silverman@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of March 2021 a true and correct copy of the foregoing was electronically filed and served on:

Steven M. Berman, Esq.
**SHUMAKER, LOOP & KENDRICK, LLP**
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone (813) 229-7600
Facsimile (813) 229-1660
Primary E-Mail: sberman@shumaker.com
Secondary E-Mail: khuntergsbumaker.com
*Counsel for Trustee Douglas M Menchise,*
*Ch. 7 Trustee*

*/s Lawrence D. Silverman, Esq.*
LAWRENCE D. SILVERMAN